EJK:KMT
F.#2012R00924

**12 M 599**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

MARLON ERROL HARIRAM,

              Defendant.

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(T. 16, U.S.C.,
§§ 3372(a)(2)(A),
3373(d)(1)(A); T. 18,
U.S.C., §§ 3351 et seq.)

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

      RYAN BESSEY, being duly sworn, deposes and says that he is a Special Agent of the United States Fish and Wildlife Service ("USFWS"), duly appointed according to law and acting as such.

      Upon information and belief, there is probable cause to believe that on or about May 20, 2012, within the Eastern District of New York, the defendant MARLON ERROL HARIRAM did knowingly and intentionally import, transport, receive and acquire in interstate and foreign commerce wildlife, to wit: nine finches, taken, possessed and transported in violation of the laws, treaties and regulations of Guyana, knowing that said finches were taken, possessed and transported in violation of the laws, treaties and regulations of the United States and in violation of the laws, treaties and regulations of Guyana.

(Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(A); Title 18 United States Code, Sections 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

## INTRODUCTION

1. I have been employed as a Special Agent by the United States Fish and Wildlife Service ("USFWS") since July 2010. I am currently assigned to the agency's office in Valley Stream, New York. Previously, I was employed by the USFWS, Office of Law Enforcement for 6 years, including as a Wildlife Inspector. My responsibilities as a USFWS Special Agent include enforcement of the Lacey Act, 16 U.S.C. §§ 3371 et seq., the Endangered Species Act, 16 U.S.C. §§ 1538 et seq., the federal smuggling statute, 18 U.S.C. § 545, and other related federal and state statutes and all regulations promulgated thereunder. I have been involved in numerous investigations regarding the illegal importation of wildlife, including birds, into the United States.

2. This affidavit is based upon my personal knowledge and involvement in this investigation and upon information, documents and reports provided to me by law enforcement officials and other individuals.[1]

---

[1] Because the purpose of this Complaint and Affidavit is to state only probable cause to arrest, I have not described all

2

## BACKGROUND

3.  During the past several years, Customs and Border Patrol ("CBP") officers working at John F. Kenney International Airport ("JFK") have intercepted numerous individuals trying to bring finches, which are small seed-eating birds, into the United States from Guyana by concealing the birds in various manners and failing to fill out the required declaration of importation forms. As set forth below, such conduct is in violation of the law. It also subverts the requirement that birds from foreign countries be quarantined to prevent the possible spread of disease.

4.  My investigation has revealed that certain Guyanese immigrants living in the Eastern District of New York keep finches to enter them in singing contests. In such contests, often conducted in public areas like parks, two finches sing and a judge selects the bird determined to have the best voice. Many who attend the singing contests place wagers on the birds. A finch who wins many competitions becomes quite valuable, and can sell for in excess of $5,000. Although certain species of finch are available in the United States, species from Guyana are believed to sing better and are therefore more highly sought after. The resulting market for Guyanese finches in the New York area can translate into financial profit for someone

---

the relevant facts and circumstances of which I am aware.

willing to smuggle finches into the United States from Guyana.

### Relevant Statutes and Regulations

5. The laws of Guyana prohibit the exportation of wild birds, including finches, from Guyana. See Laws of Guyana, Wild Bird Protection Act, Chap. 71:07. The Wild Birds Protection Act (the "Act") regulating that country's wildlife makes it an offense to "expose[] or offer for sale or export[] or attempt[] to export from Guyana, any wild birds or part of any wild bird captured and killed" after the passage of the Act in 1919. The list of "wild birds" encompassed by the Act includes "Finches (grass birds and allies) (Fringillidae)." Id.

6. The Lacey Act makes it unlawful for any person to "import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce . . . any fish or wildlife taken, possessed, transported, or sold in violation of any . . . foreign law." 16 U.S.C. §§ 3372(a)(2)(A). The Lacey Act defines the term "fish and wildlife" to include birds. 16 U.S.C. § 3371(a). It is therefore a violation of the Lacey Act to take finches from Guyana, in violation of Guyanese law, and import them into the United States.

### The Defendant's Conduct

8. On or about May 20, 2012, the defendant MARLON ERROL HARIRAM arrived at John F. Kennedy International Airport in Queens, New York aboard Easy Jet flight D2101 from Georgetown,

4

Guyana. HARIRAM was referred by Department of Homeland Security, Customs and Border Protection ("CBP") officers for a customs examination. Prior to the examination, HARIRAM submitted his CBP Form 6059B/Customs Declaration, on which he had checked "No" to the statement "I am bringing meats, animals, animal/wildlife products."

9. During the exam, a CBP officer discovered what appeared to be nine (9) live birds concealed in the sleeves of a shirt that was tucked into HARIRAM's back pants pocket. The CBP officer subsequently notified CBP Agriculture officers, who responded to assist with the inspection. After further examination, it was discovered that the birds were individually packaged in toilet paper rolls, covered with netting and packaging tape, and hidden in the sleeves of HARIRAM's shirt. HARIRAM told the CBP officer that it was difficult to get the appropriate paperwork required to legally export birds from Guyana. HARIRAM requested that the CBP officer, "give me a chance." The CBP officer understood this as a request to let HARIRAM go without punishment. HARIRAM told the CBP officer that he has dealt with USFWS in the past.

10. Soon thereafter, I responded to John F. Kennedy International Airport. I, together with a CBP officer, spoke to HARIRAM, who stated that he had concealed the birds in the tubes and placed them into his shirt sleeves. HARIRAM stated that he

believed the birds could be easily sold in Queens, New York. HARIRAM said he purchased the birds in Guyana for approximately $20.00 dollars each.

11. All birds and packing materials were transferred to the United States Department of Agriculture (USDA) quarantine facility.

12. Searches of USDA, USFWS, and Guyana Management Authority databases revealed HARIRAM had neither applied for nor received permits authorizing importation of the birds into the United States or exportation out of Guyana. There were also records of HARIRAM being fined for smuggling live finches from Guyana to the United States using the same method on previous occasions in 2005 and 2011.

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued for the defendant MARLON ERROL HARIRAM so that he may be dealt with according to law.

_____
Ryan D. Bessey
Special Agent
United States Fish and Wildlife Service

Sworn to me this
22 day of June, 2012

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK